***********
The Full Commission reviewed the prior Opinion and Award, based upon the record of the proceedings before Deputy Commissioner Rowell and the briefs before the Full Commission. The appealing party has not shown good grounds to reconsider the evidence; receive further evidence; rehear the parties or their representatives; or amend the Opinion and Award. Accordingly, the Full Commission affirms the Opinion and Award of Deputy Commissioner Rowell.
 ***********
The Full Commission finds as fact and concludes as matters of law the following, which were entered by the parties as:
 STIPULATIONS
1. At the time of the alleged injury on September 24, 2002, the parties were subject to and bound by the provisions of the North Carolina Workers' Compensation Act, the defendant-employer employed three or more employees, and an employee-employer relationship existed between plaintiff and defendant-employer.
2. The carrier on the risk was Liberty Mutual Insurance Company.
3. Plaintiff's average weekly wage is sufficient to generate the maximum workers' compensation rate for the date of the alleged injury.
4. The issues for decision by the Full Commission include (a) whether plaintiff sustained an injury by accident arising out of and in the course of his employment with defendant-employer on September 24, 2002; and (b) if so, the medical compensation and compensation for temporary disability, if any, to which plaintiff is entitled as a result of this injury.
5. The parties stipulate into evidence as Stipulated Exhibit #1, the Pre-Trial Agreement as modified and initialed by the parties, including documentation contained in a notebook as referenced by Index of Content.
 ***********
Based upon all the competent evidence of record and reasonable inferences flowing therefrom, the Full Commission makes the following:
 FINDINGS OF FACT
1. At the time of the hearing, plaintiff was 40 years old and a high school graduate. He attended North Carolina AT State University for six years, majoring in electrical engineering. Plaintiff has been employed by defendant-employer since September 1987.
2. Plaintiff was initially employed by defendant-employer on a part-time basis while he was still in college to load trucks. He later advanced to sorting packages and moving truck trailers. Since 1996, he has been employed full-time at the defendant's large Greensboro hub as a package car driver. In 2002, plaintiff's normal route included the area around Cone Mills Corporation's White Oak Plant in Greensboro.
3. Plaintiff typically worked nine or ten hours and sometimes eleven hours a day. His duties consisted primarily of delivering and picking up packages of various sizes weighing up to 150 pounds.
4. Defendant-employer sends its employees to Greensboro Orthopaedic Center for treatment of occupational injuries. Prior to September 24, 2002, Dr. Jeffrey Beane and other physicians at Greensboro Orthopaedic Center had treated plaintiff for back strains occurring in his employment with defendant-employer in 1997 and 1998. For a few weeks before September 24, 2002, plaintiff was experiencing pain, which would intermittently go down his right leg. Prior to September 2002, plaintiff had also experienced pain in the right hip area from time to time.
5. The number and sizes of pieces loaded on a truck varies from day to day. On September 24, 2002, the package car truck plaintiff drove was "bulked out," meaning there was little room in the truck, when he reported to work. One of plaintiff's early stops was usually at the Cone Mills facility. On September 24, 2002, plaintiff stopped at this facility and backed his truck up to the loading dock and unloaded a number of packages.
6. There was a long crate containing a piece of equipment and weighing in the area of 80 to 115 pounds. Plaintiff lifted one end of the crate. Since plaintiff's footing was limited because of other packages on the truck floor, plaintiff twisted to place one end of the long crate on the dock. He then slid the second end of the crate onto the dock. At the hearing before the Deputy Commissioner, plaintiff testified that he felt a pulling sensation and pain in the right side of his lower back and right lateral hip when twisting to place the first end of the crate on the dock. Based on plaintiff's testimony, this was not the same soreness or aching that he had experienced before in the right hip area, as this was more intense.
7. Plaintiff completed unloading the packages for Cone Mills. He also continued to complete his deliveries and pick-ups for the day. The right low back and hip pain plaintiff had first experienced in unloading the long crate at Cone Mills worsened throughout the day.
8. On September 24, 2002, plaintiff completed his work at 7:13 p.m., working over ten hours, as he had commenced work at 7:13 a.m. When he returned to the Greensboro hub on the evening of September 24, 2004, plaintiff sought the supervisor on duty to report his injury. Plaintiff told the supervisor, Sean Latta, that he had injured himself and wanted to see one of the employer's physicians at the Greensboro Orthopaedic Center. Plaintiff became upset when Mr. Latta questioned his symptoms and injury. There were some strong words between plaintiff and Mr. Latta. Mr. Latta told plaintiff to see him in the morning to call in the details of his injury to the defendant-carrier consistent with the employer's standard practice.
9. Plaintiff went to the Greensboro hub the next morning to file a formal accident report and to be referred for an examination to a physician at the Greensboro Orthopaedic Center. Plaintiff continued to experience low back and right hip pain. Plaintiff was interviewed by telephone by defendant-carrier's representative concerning the circumstances of his injury. Defendant-employer's supervisor was present and overheard the description of this injury. Plaintiff told defendant-carrier's representative that the injury occurred when he was unloading the heavy crate at Cone Mills on the previous day.
10. Plaintiff and supervisor, Sean Latta, completed a formal accident report on September 25, 2002, and plaintiff was then referred to the Greensboro Orthopaedic Center. Mr. Latta completed some parts of the report and plaintiff completed the remainder. The report documents that the injury occurred on September 24, 2002, at "Package Car (Back)" at the Cone Mills facility. Mr. Latta personally wrote that the injury occurred "lifting long wooden crate, turned to put it on dock and think may have hurt hip." As to how the "employee's behavior" contributed, Mr. Latta wrote that he determined the employee twisted while moving over 70 pounds to the dock instead of pivoting his feet and that the "root cause" of the injury was "twisting at hip while moving 70 lb onto dock. Not pivoting feet." Plaintiff wrote on this form that his injury occurred when he lifted "over 70 lb. crate onto dock 8 ft long; put on dock hurt hip in process."
11. An OSHA Form 301 Report completed by defendant-employer on September 25, 2002, reported that plaintiff had been injured on September 24, 2002, "reaching for bulk pkg. in rear of car to deliver to customer" and "Emp. was lifting an over 70 lb. pkg. that was a long crate and he felt pain in right hip."
12. On September 25, 2002, Dr. Andrew Collins, a sports medicine specialist at Greensboro Orthopaedic Center in its acute care clinic, examined plaintiff. Dr. Collins' impression was right hip osteoarthritis and "lumber muscular strain." Dr. Collins prescribed medication for inflammation and pain and released plaintiff to resume his regular duties on September 26, 2002. Dr. Collins recorded in his history that plaintiff was complaining of right lateral hip pain and buttock pain that began on September 24, 2002, after lifting a 100 pound box onto a shipping dock at work. Dr. Collins also noted that preceding this injury for a few weeks plaintiff had been experiencing some pain that would go down the right leg intermittently. Plaintiff was out of work on September 25, 2002, for medical treatment for his injury.
13. Plaintiff returned to work on September 26, 2002, and worked with pain in his low back, buttocks and right hip area. Dr. Collins prescribed additional medication for plaintiff on October 31, 2002.
14. Defendant-carrier denied plaintiff's workers' compensation claim on October 7, 2002, using an Industrial Commission Form 61, on the basis that his injury did not arise from the employment and did not occur by accident.
15. On November 20, 2002, plaintiff returned to see Dr. Collins because his pain was hindering the performance of his work for defendant-employer. Plaintiff was complaining of right buttock, thigh and leg pain. Dr. Collins' impression was "probable neuropathic pain right lower extremity sciatica secondary to lumbar discogenic injury." Dr. Collins prescribed medication and recommended a lumbar MRI scan. It was necessary for plaintiff to remain out of work on November 20, 2002, to attend this appointment with Dr. Collins. Plaintiff returned to work on November 21, 2002, and continued to work with back, hip and leg pain. The MRI completed on December 4, 2002, revealed two lumbar disc protrusions.
16. On November 18, 2002, plaintiff saw his family physician, Edwin Avbuere because of his pain and was given medication. Dr. Avbuere prescribed additional medication for the low back and right hip pain on December 31, 2002, when plaintiff was seen again.
17. On January 9, 2003, Dr. Richard Ramos at Greensboro Orthopaedic Center saw plaintiff from a referral by Dr. Collins. Dr. Ramos was unclear on whether plaintiff's symptoms were from the right hip or a right L4 radiculopathy. He prescribed medication and recommended a right hip injection and consideration of a right L4 selective nerve root block. Plaintiff did not return to Dr. Ramos until March 17, 2003, because of a problem encountered with his group insurance in approving the additional procedures Dr. Ramos had recommended.
18. On February 5, 2003, plaintiff presented to his family physician, Dr. Avbuere because his right hip and back pain were continuing to interfere with his work performance. Dr. Avbuere recommended that plaintiff "should avoid heavy lifting" required in his work and stay out of work for several weeks to see if this would help improve his back and right hip pain.
19. Plaintiff reported to work on February 6, 2003, but was unable to work beginning February 7, 2003, through March 31, 2003, because of his right hip, back and leg pain. Plaintiff gave a note to the defendant-employer from Dr. Avbuere confirming that he was to remain out of work until March 5, 2003, as a result of the pain from the "back injury/hip injury." Defendant-employer does not permit a package car driver to work with restrictions on lifting. The drivers are required to have a full duty release before returning to work.
20. Beginning March 4, 2003, plaintiff sought treatment from Dr. George Salama, a chiropractor. Dr. Salama noted that plaintiff was seeking treatment for low back pain and right hip pain that commenced at work in September 2002. Dr. Salama recommended that plaintiff do no lifting and remain out of work while under his care. Dr. Salama's chiropractic treatment continued through March 18, 2003.
21. Plaintiff returned to see Dr. Ramos at Greensboro Orthopaedic Center on March 17, 2003, after he had group insurance coverage for this treatment. Dr. Ramos recommended a right L4 selective nerve root block and right facet joint injection for relief of the pain plaintiff was experiencing in his low back, right hip and leg. Dr. Ramos restricted plaintiff for two weeks to light duty work, with lifting of no more than twenty pounds, no bending, stooping, prolonged standing or sitting, or driving. Defendant-employer had no work for plaintiff with these limitations, as a full duty release was required.
22. Dr. Ramos administered the nerve root block and injection on March 19, 2003. On March 31, 2003, Dr. Ramos released plaintiff for full duty as a UPS driver.
23. Plaintiff has continued to work for defendant-employer as a package car driver since April 1, 2003. However, he is still having pain in the low back and right hip areas and takes medication for this.
24. On July 3, 2003, Dr. Ramos saw plaintiff again with complaints of right buttock and lateral thigh pain. On this occasion, Dr. Ramos referred plaintiff to Dr. Jeffrey Beane for a surgical evaluation. Dr. Beane is an orthopaedic surgeon at the Greensboro Orthopaedic Center specializing in the lumbar spine. Dr. Beane had seen plaintiff in 1997 for a low back strain that occurred at work but resolved with conservative treatment.
25. On July 17, 2003, Dr. Beane examined plaintiff. Dr. Beane's impression was L4 radicular pain secondary to far-lateral disc protrusion L4-5. Dr. Beane saw plaintiff again on September 2, 2003, because of plaintiff's persistent pain.
26. On October 6, 2003, Dr. Beane reviewed current lumbar MRI films completed on September 27, 2003. This MRI revealed a progression of a disc herniation at L4-5 with encroachment of the L4 nerve root. Dr. Beane's impression was "persistent right buttock and lower extremity radicular pain secondary to progression of the disk herniation at L4-5." Dr. Beane presented plaintiff with the option of a lumbar decompression surgery at L4-5 on the right.
27. Dr. Beane's October 6, 2003, office note specifically addressed the relationship of plaintiff's present back condition and plaintiff's September 24, 2002, injury. Dr. Beane states:
 Considering the etiology of his pain pattern, I reviewed his records, and he has had this right hip and buttock pain since the initial presentation with Dr. Collins. This is directly related to a work injury. He was then seen by Dr. Ramos for selective nerve root block which gave him temporary relief. Given his symptoms, today on exam, and his MRI, which demonstrates further progression of this HNP, I feel this is a pathology that is secondary to his work injury and demonstrates a further progression of his symptomatology.
28. In his medical deposition testimony, Dr. Jeffrey C. Beane stated that the symptoms plaintiff described following his September 24, 2002, injury as "hip pain" are consistent with pain emanating from irritation of the L4 nerve root because of a lumbar disc injury as opposed to a condition in the hip itself. Dr. Beane stated that most patients with complaints of hip pain are referring to the outside of the hip or buttock area and this pain generally is referred from the back.
29. The competent evidence in the record establishes that on September 24, 2002, plaintiff sustained an injury by accident to his lumbar spine, arising out of and in the course of his employment with defendant-employer and as a direct result of the work assigned on that date. This occurred when plaintiff experienced a pulling sensation and pain in the low back and right lateral hip area as he lifted one end of a heavy crate. The lifting and handling of this heavy crate, in the course of plaintiff's work as a package car driver, constituted a specific traumatic incident in the work assigned plaintiff and caused a disabling injury to the lumbar spine. This injury led to a progression of a right foraminal lateral disc herniation at L4-5 with encroachment of the L4 nerve root.
30. As a result of plaintiff's injury by accident, plaintiff was unable to work and earn wages in any capacity for the defendant-employer on September 25, 2002, on November 20, 2002, and from February 7, 2003, through March 31, 2003. Defendant-employer did not offer plaintiff work within his medical restrictions during these periods.
31. The evaluation and treatment provided by the physicians at the Greensboro Orthopaedic Center, by Dr. Avbuere, and by Dr. Salama were reasonably necessary to evaluate and treat and provide relief to plaintiff from the injury by accident.
 ***********
Based upon the foregoing stipulations and findings of fact the Full Commission makes the following:
 CONCLUSIONS OF LAW
1. As a direct result of the work assigned to plaintiff, on September 24, 2002, plaintiff sustained a specific traumatic incident to his lumbar spine, arising out of and in the course of his employment with defendant-employer, which resulted in a disabling physical injury to his back. N.C. Gen. Stat. § 97-2(6).
2. As a direct and proximate result of plaintiff's compensable injury to his back, plaintiff is entitled to compensation for temporary total disability at the rate of $654 per week on September 25, 2002, on November 20, 2002, and from February 7, 2003, through March 31, 2003. N.C. Gen. Stat. § 97-29.
3. As a result of plaintiff's compensable injuries by accident, the plaintiff is entitled to have defendant pay for all his related medical expenses incurred or to be incurred, for so long as such evaluations, examinations and treatments may be reasonably required to effect a cure, give relief and will tend to lessen plaintiff's disability. N.C. Gen. Stat. §§ 97-2(19) and 97-25.
 ***********
Based upon the foregoing stipulations, findings of fact and conclusions of law, the Full Commission enters the following:
 AWARD
1. Subject to a reasonable attorney's fee hereinafter approved, defendants shall pay compensation to plaintiff for his temporary total disability at the rate of $654.00 per week for September 25, 2002, November 20, 2002, and from February 7, 2003, through March 31, 2003. Compensation due which has accrued shall be paid to plaintiff in a lump sum, subject to the attorney's fees hereinafter approved. This compensation has accrued and shall be paid in a lump sum subject to the attorney's fee hereinafter approved.
2. Defendants shall pay for all of plaintiff's medical expenses incurred or to be incurred as a result of plaintiff's compensable injuries by accident on September 24, 2002, for so long as such evaluations, examinations and treatments may be reasonably required to effect a cure or give relief and will tend to lessen the period of plaintiff's disability. These medical expenses shall include payment for the services of the physicians at the Greensboro Orthopaedic Center, Dr. Avbuere, and Dr. Salama.
3. A reasonable attorney's fee of twenty-five percent (25%) of the compensation awarded to plaintiff under Paragraph 1 of this Award is approved for plaintiff's counsel and shall be deducted from sums due plaintiff and paid directly to plaintiff's counsel.
4. Defendants shall pay the costs.
This the ___ day of April 2005.
 S/_________________ PAMELA THORPE YOUNG COMMISSIONER
CONCURRING:
 S/___________________ BERNADINE S. BALLANCE COMMISSIONER
 S/_____________ THOMAS J. BOLCH COMMISSIONER